IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

**OCT - 6 2005**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| M.I.R.A. – G.M.P. and ALLIED WORKERS PENSION TRUST, and M.I.R.A. – G.M.P. and ALLIED WORKERS INSURANCE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>EXCELSIOR FOUNDRY COMPANY a/k/a EXCELSIOR FOUNDRY COMPANY BELLEVILLE ILLS.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:04-cv-64<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CONSENT JUDGMENT

Plaintiffs, M.I.R.A.-G.M.P. and Allied Workers Pension Trust ("Plaintiffs Pension Trust") and M.I.R.A.-G.M.P. and Allied Workers Insurance Trust ("Plaintiffs Insurance Trust"), (collectively referred to herein as "Plaintiffs"), and Defendant, Excelsior Foundry Company a/k/a Excelsior Foundry Company Belleville Ills., and all trades and business under common control with it, (collectively "Excelsior"), by and through the parties' undersigned attorneys, hereby agree as follows:

1.  The Court has jurisdiction of the subject matter and of all persons and parties pursuant to 29 U.S.C. §1451(c) and 28 U.S.C. §1331.

2.  The Plaintiffs filed a complaint against Excelsior for delinquent payments of its pension contributions to Plaintiffs; for delinquent payments of its insurance premiums to Plaintiffs; for delinquent withdrawal liability; accrued interest; liquidated damages, costs, and attorneys' fees.

3. Excelsior agrees to a Consent Judgment for the full amount of the withdrawal liability ($2,657,388.80), plus the full amount of the delinquent pension contributions ($11,414.17), plus the full amount of the delinquent insurance premiums ($66,675.56), plus attorneys' fees and costs ($9,460.05), totaling $2,744,938.52 (the "Judgment Damages").

4. This Consent Judgment shall constitute a judgment lien in first position in the amount of the Judgment Damages on the real estate owned by Excelsior commonly known as 1123 East "B" Street in Belleville, Illinois (the ""1123 East 'B' Street Property"). The legal description more particularly describing the 1123 East 'B' Street Property is found in Exhibit "A," which is incorporated herein by reference. Excelsior represents that it owns no real estate other than what is described in this paragraph. Excelsior herewith provides Plaintiffs with a description of each asset that Excelsior otherwise owns ("other assets"). (See attached Exhibit "B"). Excelsior shall have the right to spend up to a maximum of $10,000.00 of its other assets for the continued reasonable and necessary costs of liquidation and winding-up of its business. Excelsior shall, on a quarterly basis, provide the Plaintiffs with an accounting of the status of said other assets, as well as an accounting of the expenses incurred in the liquidation and winding up of its business. Except as provided above, Excelsior shall pay over to Plaintiffs the full amount of any sum otherwise collected. Accordingly, except for the $10,000.00 for the continued liquidation and winding-up of Excelsior's business, those other assets identified by reference to Exhibit "B" shall be used for the partial satisfaction of this Consent Judgment.

5. Excelsior represents that, except for the assets referred to in paragraph 4, it has no other assets, including, but not limited to, account receivables, property held by a third party, or potential court awards. However, if any assets are discovered in addition to the assets described elsewhere in this document, said assets shall be transferred to Plaintiffs towards payment of its priority claim.

6. Except for a breach of the representations in Paragraph 5, Plaintiffs on the one hand, and Excelsior on the other hand, in respect of the mutual promises and other consideration recited herein, hereby release each other and their respective predecessors in interest, successors, shareholders, directors, officers, employees, agents, and assigns of any and all obligations, claims, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, arising out of, by reason of, or relating in any way whatsoever to the claims that were or could have been asserted in the Complaint.

7. Therefore, it is ordered that the Plaintiffs shall have a consent judgment against Excelsior for the full amount of the withdrawal liability ($2,657,388.80), plus the full amount of the delinquent pension contributions ($11,414.17), plus the full amount of the delinquent insurance premiums ($66,675.56), plus attorneys' fees and costs ($9,460.05), totaling $2,744,938.52.

8. The parties, through their respective counsel, have read this document and understand its contents. The parties state that they are authorized to execute this Consent Judgment and that they have signed the same voluntarily, understanding that their signatures mean that they have agreed to everything in this document.

Signed this 5TH day of OCTOBER, 2005.

M.I.R.A.-G.M.P. and Allied Workers Pension Trust, and M.I.R.A.-G.M.P. and Allied Workers Insurance Trust, Plaintiffs.

By: *Harold G. Bernstein*
Print Name

Title: Attorney for Plaintiffs

Signed and sealed before me this 5TH day of OCTOBER, 2005.

*Jayne E. McEntee*
Notary

OFFICIAL SEAL
JAYNE E. MCENTEE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2006

Signed this 20 day of SEPTEMBER, 2005.

Excelsior Foundry Company, Defendant.

By: FRANK P. ROGERS
Print Name

Title: PRESIDENT

Signed and sealed before me this 20 day of September, 2005.

*Robin J Lewis*
Notary

OFFICIAL SEAL
ROBIN J LEWIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/02/09

*Donald Wilkerson*
Judge

10-6-05
Date Entered

SL01DOCS\2048760.4

4

BOOK 3976 PAGE 457

Part of Lot #3 of "U. S. SURVEY 375 CLAIM 304" and being more particularly described as follows, to-wit:

Commencing the survey thereof at the intersection of the Northwesterly right-of-way line of a public road known as 'East "B" Street Road' and the Northeasterly right-of-way line of a pulbic road known as 'Missouri Avenue'; running thence in a Northwesterly direction along the Northeasterly right-of-way line of said 'Missouri Avenue' a distance of Fifty (50.0) feet to a point; said point being the point of beginning of the tract herein being described; continuing thence Northwesterly along said right-of-way line a distance of Two Hundred Fifty-Two and Seventy-Nine Hundredths (252.79) feet to a point; running thence Northeasterly along a line making a counterclockwise angle with the last described course of 90°09' a distance of Fifty-Six and Ninety-Eight Hundredths (56.98) feet to a point; running thence Northwesterly along a line making a counterclockwise angle with the last described course of 269°40' a distance of Five Hundred Four (504.0) feet to a point; running thence Northeasterly along a line making a counterclockwise angle with the last described course of 90°20' a distance of Two Hundred Thirty and Three Tenths (230.3) feet to a point in the Southwesterly right-of-way line of the 'Louisville & Nashville Railroad'; running thence Southeasterly along said right-of-way line a distance of Six Hundred Ninety-Two and Twenty-Four Hundredths (692.24) feet to a point; running thence Northerly along said right-of-way line and making a clockwise angle with the last described course of 52°00'40" a distance of Thirty-One and Seven Tenths (31.7) feet to a point; continuing thence Southeasterly along said right-of-way line and making a counterclockwise angle with the last described course of 52°00'40" a distance of Fifty-Three and Seventy-Eight Hundredths (53.78) feet to a point; running thence Southwesterly along a line making a counterclockwise angle with the last described course of 79°07'40" a distance of Forty-Six and Seventy-Nine Hundredths (46.79) feet to a point; running thence Southeasterly at right angles a distance of One Hundred (100.0) feet in the Northwesterly right-of-way line of said 'East "B" Street'; running thence Southwesterly along said right-of-way line at right angles a distance of Two Hundred Ninety-Nine (299.0) feet to a point; running thence Northwesterly along a line making a counterclockwise angle with the last described course of 90°18' a distance of Ninety (90.0) feet to a point; running thence Southwesterly along a line making a counterclockwise angle with the last described course of 269°42' a distance of Fifty (50.0) feet to a point; running thence Southeasterly along a line making a clockwise angle with the last described course of 89°42' a distance of Forty (40.0) feet to a point; running thence Southwesterly along a line making counterclockwise angle with the last described course of 89°42' a distance of Fifty (50.0) feet to the point of beginning and containing 5.85 acres more or less.

EXHIBIT A



## Exhibit B

1) Vermilion Foundry:  This issue involves the Vermilion Foundry, which purchased certain supplies after Excelsior closed.  These supplies had a value of approximately $12,000.  Vermilion Foundry did not make payment.  At this time, there is a judgment to which Excelsior is entitled to collect approximately $200 per month.  Payment on this judgment is irregular, and Excelsior has been forced to return to court to enforce it.  It is unknown what payments will be made in the future.

2) Fluid-Tech in Gillespie, Illinois:  This is a pending lawsuit that pre-existed Excelsior's closing.  Excelsior sued a customer for failure to make payment on $32,000 in castings.  The trial has been continued, and the defendant may declare bankruptcy.  There is a potential for a settlement of $5,000.

3) Mitwalli Steel/Breach of Contract action:  This is a pending lawsuit that pre-existed Excelsior's closing.  Excelsior sued a customer for breach of contract for damages in the amount of approximately $40,000.  The action was brought in 1997 and is pending in Saudi Arabia, the location of the customer.  It is unknown what the potential recovery is at this time.